UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROYSTON HO-A-LIM, ) | |
| ) | Case No. 1:08-CV-1200 |
| Plaintiff, ) | |
| ) | Judge Ann Aldrich |
| v. ) | |
| ) | |
| CUYAHOGA COMMUNITY COLLEGE, ) | |
| ) | |
| Defendant. ) | MEMORANDUM AND ORDER |
| ) | |
| ) | |

Before the court is defendant Cuyahoga Community College's ("Tri-C") motion for summary judgment [Doc. 27], plaintiff Royston Ho-A-Lim's ("Ho-A-Lim") brief in opposition [Doc. 28], and Tri-C's reply [Doc. 29].

For the following reasons, the court grants Tri-C's motion for summary judgment.

**I. BACKGROUND**

Ho-A-Lim filed a three count complaint against Tri-C for race and religion discrimination in violation of 42 U.S.C. §§ 1981 and 1983, race and religion based discrimination in violation of Title VII of the Civil Rights Act of 1964, and wrongful termination in violation of Title VII. [Doc. 1].

In August 2000, Ho-A-Lim, a Hispanic Muslim male, began his employment as a Tri-C police officer. [Doc. 28]. Ho-A-Lim alleges that while employed by Tri-C he was subject to race and religion based discrimination, and that his discharge on August 2, 2007 resulted from the discrimination.

1

On July 4, 2007, Ho-A-Lim and another officer, Officer Nichols, were ordered to go to West Campus by Corporal Beverly Bankston ("Bankston"), their supervisor.  The order from Bankston was given to two dispatchers, James Dowdell and Scott Koch, who both stated that this order was relayed to Ho-A-Lim.  Dowdell Aff. ¶ 4 and Koch Aff. ¶ 4.  Ho-A-Lim refused to go to West Campus, and he further denied receiving this order at a pre-disciplinary conference; he was subsequently discharged for failing to obey an order and lying about receiving the order . [Doc. 29].  Sergeant Shari Brazile ("Brazille") is the Labor and Employee Representative. Brazille Aff. ¶ 4.  Brazille reviewed the dispatch tape and found that Ho-A-Lim was indeed ordered to go to West Bank and that he violated the order.  *Id.* ¶ 8.  Brazille found that Ho-A-Lim "was guilty of gross misconduct by virtue of his dishonesty and presenting false information during a due process hearing and disobeying lawful and proper orders as instructed by a superior ranking officer."  *Id.* ¶ 9.  Subsequently, the case was submitted for arbitration to determine if there was just cause for discharging Ho-A-Lim.  The arbitrator agreed with Brazille's findings. [Doc. 27-6].

As a result of these incidents, Ho-A-Lim was terminated from his employment on August 2, 2007 and Ho-A-Lim filed the instant action.  Tri-C filed a motion for summary judgment, arguing that Ho-A-Lim (1)failed to establish his prima facie case of discrimination, (2) was terminated for a legitimate non-discriminatory reason**,** (3) provided no evidence that his termination was pretextual, (4) presented claims that are unexhausted, and (5) was not subject to a hostile work environment.

**II.  LAW AND ANALYSIS**

**A. Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e)(2):

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial. . . .

Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view all of the evidence in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252.

3

**B.  The Legal Standard for Title VII**

The analysis for claims arising under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-17, and 42 U.S.C. §§ 1981 and 1983) was set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff carries the initial burden to show a prima facie case. *Id.* at 802; *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006).  If the plaintiff is successful at proving a prima facie case the burden shifts to the employer to rebut the accusation of discrimination by offering a "legitimate, nondiscriminatory reason for the employee's rejection."  *McDonnell Douglas*, 411 U.S. at 802.  The plaintiff must then show that "the defendant's 'legitimate, nondiscriminatory reason' was a 'pretext for discrimination.'" *Wright,* 455 F.3d 706-07 (citations omitted).  Ultimately, the plaintiff carries the burden of proving by a preponderance of the evidence that the intent of the defendant was to discriminate. *Id*. at 707;  *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

**C.  Prima Facie Case**

*Wrongful Termination*

 Ho-A-Lim can establish a prima facie case by proving that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.  *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

Ho-A-Lim meets the first three elements required to establish a prima facie case: he is Hispanic Muslim; he was terminated from his job; and he was qualified for the position he held. However, Ho-A-Lim fails to identify a person outside of the protected class and similarly-

situated to himself, who was treated more favorably than him. The only comparator employees that Ho-A-Lim presents to establish his prima facie case are Ralph Hughes and Victor Gill, both of whom are non-Muslim Caucasian males also employed as field officers with the Tri-C police department. Ho-A-Lim alleges that Hughes and Gill were treated more favorably than himself. [Doc. 28]. However, Tri-C contends that according to Ho-A-Lim's theory, Hugh was actually treated worse than Ho-A-Lim, and that because Gill never violated a direct order from a superior officer, he cannot be a comparator employee. [Doc. 29].

To prove that two employees are "similarly situated," the plaintiff and comparator must be "similarly situated in *all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *see also Scotts v. Memphis Fire Dep't*, 858 F.2d 289 (6th Cir. 1988). The plaintiff and the comparator employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. The plaintiff and comparator must not have "committed the same alleged misconduct to be comparable. Instead, they must 'have engaged in acts of comparable seriousness.'" *Johnson-Romaker v. Kroger Ltd. P'ship One*, 609 F. Supp. 2d 719, 730 (N.D. Ohio 2009) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)). Therefore, the court must analyze the similarities between the plaintiff and the comparator on a case-by-case basis. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

In this case, Ho-A-Lim has identified two comparator employees. Gill is a field officer at Tri-C and was scheduled to work on July 4, 2007. Ho-A-Lim states that he and Gill both refused

to go to West Campus, and although Ho-A-Lim was disciplined for refusing this order, Gill was not. [Doc. 28]. However, the transcript of the dispatch tape for July 4, 2007 shows that only Nichols and Ho-A-Lim were ordered to go to West Campus. When the dispatcher, Dowdell, asked, "Who's coming?," Bankston replied "Nichols and Ho-A-Lim." There is no evidence that Bankston ordered Gill to go to West Bank. Therefore, Gill is not similarly situated to Ho-A-Lim and is not an appropriate comparator employee.

Similarly, Ho-A-Lim identifies Hughes as another comparator employee, who is also a field officer at Tri-C. Ho-A-Lim alleges that Hughes was treated more favorably, despite numerous complaints alleged against him. Ho-A-Lim presents evidence that Hughes was accused of sexually harassing two different female officers. Tri-C's Office of Diversity, Inclusion and Affirmative Action investigated the first allegation, which resulted in a 20 day suspension, transfer to another campus location, mandatory sexual harassment training, and individual counseling through the college's Impact Employee Assistance Program. Reynolds Dep., p. 42-43, Feb. 10, 2009. Subsequently, a second incident led to the discharge of Hughes. The discharge of Ho-A-Lim however, rests on different grounds. Ho-A-Lim was discharged for insubordination and subsequently lying during the investigation about receiving the order. The complaints made against Hughes and Ho-A-Lim are not comparable.

Nonetheless, during the spring of 2002, Ho-A-Lim was cited for flirting with a female concert guest and the supervisor only issued a memorandum regarding the incident. Again, in October 2004, Ho-A-Lim was disciplined for inappropriate conduct when he told a female student that "she should have been spanked" because she locked herself out of her car. Ho-A-Lim only received a written reprimand for this behavior. Thus, presumably because Ho-A-

6

Lim's harassing behavior was not as egregious as the allegations made against Hughes, Ho-A-Lim received less severe discipline than Hughes. Therefore, even if the court found Ho-A-Lim and Hughes to be similarly situated, this court could not find that Ho-A-Lim was treated differently.

Clayton Harris ("Harris"), the Chief of Police at Tri-C, identifies a Caucasian field officer (identified as Employee A) who was a member of his church, who like Ho-A-Lim, was also discharged for insubordination. Harris Dep., p. 74, Feb. 10, 2009. This statement is corroborated by Ho-A-Lim. Ho-A-Lim Dep., p. 89, Feb. 10, 2009.

Ho-A-Lim has failed to provide sufficient evidence that he is similarly situated to Gill or Hughes. Therefore, Ho-A-Lim has not establish his prima facie case for discrimination.

Finally, although Ho-A-Lim states that it is a matter of fact whether the order was given [Doc. 28], the transcript of the dispatch tape from the night in question, affidavits of the two dispatchers, and Bankston substantiate that an order was given. [Doc. 27-2, 27-3, 27-4, 27-5]. Ho-A-Lim presents no evidence to contradict this evidence. Accordingly, the court finds that no factual issue exists as to whether an order was given. It should also be noted that this issue was submitted to an arbitrator who resolved the issue in favor of Tri-C as well. The arbitrator found that there was sufficient evidence to conclude that the dispatcher's affidavits were credible. [Doc. 27-6]. Moreover, the arbitrator found that the dispatch tapes clearly indicated that Ho-A-Lim violated a direct order and gave false information at the pre-disciplinary hearing. *Id.* at 19.

Pursuant to the Employer's Operations Manual, "police officers must follow lawful orders from their supervisors and are expected at all times to be honest." *Id.* at 22. Further, the department's rules of conduct require that all officers "'shall promptly obey all lawful orders and

instructions issued by a superior ranking officer . . . however transmitted.'" *Id.* at 18.  Therefore, the arbitrator found that Ho-A-Lim did violate Tri-C's policies.  Ho-A-Lim argues that the arbitrator relied on evidence that "should have been removed from Plaintiff's personnel file." [Doc. 28 at 14].  Ho-A-Lim states that his file contained erroneous information that he disregarded a subpoena.  *Id.*  While the arbitrator relied on this to determine that there was a pattern of insubordination this argument does not nullify the arbitrator's initial finding, that in fact Ho-A-Lim did ignore an order from a superior officer.

*Hostile Work Environment*

Ho-A-Lim also alleges that he was subject to a hostile work environment.  To establish a prima facie case for hostile work environment under Title VII, a plaintiff must show: (1) he or she is a member of a protected class; (2) he or she was subjected to unwelcome racial harassment; (3) the harassment was based on the plaintiff's protected status; (4) the harassment unreasonably interfered with the plaintiff's work performance by creating an environment that was intimidating, hostile, or offensive; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective action.  *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008); *see also Michael v. Caterpillar Fin. Serv. Corp.*, 496 F.3d 584, 600 (6th Cir. 2007).  Similar to claims for wrongful termination under Title VII, hostile work environment claims are subject to the burden-shifting analysis of *McDonnell Douglas Corp.*, 411 U.S. 792. The Supreme Court has stated that for a cause of action to arise, courts should look at the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of*

*Boca Raton*, 524 U.S. 775, 787-88 (1998).  Further, "[i]solated incidents, . . . unless extremely serious, will not amount to discriminatory changes in the terms of conditions of employment." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000); *see also Russell v. Univ. of Toledo*, 537 F.3d 596, 608 (6th Cir. 2008).  This analysis must be both objective and subjective. "The environment must be the sort that 'a reasonable person would find hostile and abusive,' and the plaintiffs themselves must 'subjectively perceive the environment to be abusive.'" *Bailey*, 526 F.3d at 886.  With respect to the fifth element and the charge of respondeat superior, it has been established that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."  *Faragher*, 524 U.S. at 807.

Ho-A-Lim contends that he was subject to a hostile work environment.  Ho-A-Lim states that in passing he overheard comments regarding Hispanics, however he cannot recall specifics. Ho-A-Lim Dep. p. 85, Feb. 10, 2009.  Ho-A-Lim also states that Harris commented on his food (broccoli and sardines), but after Ho-A-Lim told Harris "that wasn't a nice thing talking about my food and he said okay, that's it. [Harris] did take care of it. [Ho-A-Lim] never heard him say anything else about it."  *Id.* at 71. The incidents that Ho-A-Lim points to as evidence of a hostile work environment appear to be isolated events that Ho-A-Lim alleges occurred in passing, and not directed toward him.  Ho-A-Lim is not able to identify who made the comments or if the persons were male or female.  *Id.* at 63-65.  Further, Ho-A-Lim informed a supervisor only once of the alleged comments that he heard in passing, four years after Ho-A-Lim says that they started. Ho-A-Lim stated that shortly after this conversation with Harris a memo was released to the entire department based upon the conversation that Harris and Ho-A-Lim had regarding the

anti-Muslim comments. *Id.* at 65-67.

Taken collectively these allegations do not satisfy either the fourth or fifth elements required to establish a prima facie case for hostile work environment. With respect to the fourth element, Ho-A-Lim cannot provide any specifics regarding who made the comments, that they were directed towards him, or the frequency at which they were made. Further, Ho-A-Lim did not pursue the matter with his supervisor, Harris, until years after these alleged comments started. While it may be possible that Ho-A-Lim felt unable to broach the subject with Harris, this is unlikely since Ho-A-Lim felt comfortable enough to discuss with Harris the comment that Harris himself once made to Ho-A-Lim about his food. Therefore, it does not appear that Ho-A-Lim was not able to bring his concerns to his supervisor. Accordingly, Ho-A-Lim has not satisfied the fourth element to establish that the harassment unreasonably interfered with Ho-A-Lim's work performance by creating an environment that was intimidating, hostile, or offensive.

For similar reasons, Ho-A-Lim has failed to establish that his employer knew or should have known about the harassing conduct but failed to take corrective action. In October 2005, Harris did send out a memo to the Department regarding the anti-Muslim comments. Ho-A-Lim never brought any other complaints to Harris's attention. Based on these facts it is difficult to find that Tri-C failed to take correct action for allegations that there was continuos discrimination occurring at Tri-C . There appears to be no substantial complaint made against Ho-A-Lim's supervisor, Harris, and no evidence that Tri-C or Harris should have believed that this was a continuing problem.

Although Ho-A-Lim makes allegations of comments that created a hostile work environment, he has failed to provide any specifics that would allow this court to find that Ho-A-

Lim was subject to such an environment. Accordingly, Ho-A-Lim has not established a prima facie case for hostile work environment.

### III. CONCLUSION

Ho-A-Lim has failed to establish his prima facie case. Accordingly, Tri-C's motion for summary judgment [Doc. 27] is granted.

IT IS SO ORDERED.

                                             /s/Ann Aldrich
                                             ANN ALDRICH
                                             UNITED STATES DISTRICT JUDGE

**Dated: June 23, 2009**